IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Shelley L. Mergen

(Chapter 7)

Debtor.

Case No. 11-16545

Troy Morrison and Christa Morrison,

Plaintiffs,

v.

Adv. No. 12-00016

Shelley L. Mergen,

Defendant.

MEMORANDUM DECISION

Troy and Christa Morrison filed a complaint seeking to except the debt owed them from discharge under § 523(a)(2)(A). The debtor failed to answer timely, and the Morrisons moved for default judgment on March 12, 2012.

On March 20, 2012, the same day the pretrial conference was scheduled, the debtor filed an untimely Answer. At the pretrial conference, the plaintiffs stated their reliance on a judgment against the debtor obtained in a state court jury trial. The debtor, in turn, argued that the plaintiffs' allegations failed to meet the standard under § 523(a)(2)(A). She also argued the underlying state court judgment was not entitled to preclusive effect. Because the debtor filed her Answer late, she was found to be in default. A defendant's failure to respond "does not

1

automatically entitle a plaintiff to entry of a default judgment." *Capital One Bank v. Bungert (In re Bungert)*, 315 B.R. 735, 736 (Bankr. E.D. Wis. 2004). A court's entry of a judgment by default itself is discretionary. *In re Redmond*, 399 B.R. 628, 633 (Bankr. N.D. Ind. 2008) (citing *Sun v. Board of Trustees of U. IL.*, 473 F.3d 799, 809 (7th Cir. 2007). It may be denied when the facts are insufficient to support the claim in the complaint. *Id.* Accordingly, a prove-up was ordered on the elements of the complaint. If the state court judgment is entitled to preclusive effect, then there is no need for a trial. This proceeding is being treated as if on cross motions for summary judgment.

Troy and Christa Morrison are husband and wife. They allege that in 2005, they purchased a home for which the debtor was the seller's real estate agent. In 2007, the Morrisons initiated civil claims against the debtor in Crawford County Circuit Court. They alleged that the debtor misrepresented and falsely advertised the home to the Morrisons by failing to disclose a material defect about which the debtor was fully aware. The material defect was "catastrophic flooding" in the home's lower level. They specifically allege that the debtor was personally aware that the lower level of the home had been flooded with mud and water, and she knew no steps had been taken to correct the defect. The debtor allegedly knew the seller had not disclosed the prior flooding to the Morrisons, and wrongly advised the seller that he did not have to disclose the condition to them.

The claims brought against the debtor in state court included claims of Strict Liability Misrepresentation and Untrue, Deceptive, or Misleading Representations (Fraudulent Advertisement). The jury instruction for Strict Liability Misrepresentation apparently required findings by a jury, "by a preponderance of the evidence, that the defendant made representations of fact to the plaintiffs based on personal knowledge, or under circumstances where she knew, or

2

necessarily should have known, the truth or untruth of the statements; that the statements were untrue; and that the statements were made during a transaction in which the defendant stood to make financial gain." (Adv. Compl. ¶ 7). The claim for Untrue, Deceptive, or Misleading Representations required findings by the jury "by a preponderance of the evidence that the defendant made, published … an advertisement, statement, or representation concerning the sale of the residence; which was untrue, deceptive, or misleading; and that the plaintiffs' [sic] sustained a monetary loss as a result of the representations." (Adv. Compl. ¶ 8). After a trial in November 2010, the jurors found in favor of the Morrisons on these claims. The jurors awarded damages in the amount of $42,500.00, a total of $45,872.31 when allowable costs were added. The Morrisons alleged that the verdict and judgment in Crawford County remains of record, and should be deemed decisive under principles of issue preclusion and/or collateral estoppel, relative to the determination of dischargeability under § 523(a)(2)(A). They have since reversed their position on preclusion, at least as it is now sought by the debtor.

In their submissions for prove-up, the Morrisons provided the Crawford County Special Verdict. The Special Verdict includes a series of questions that the jury answered in the affirmative or negative. It appears that the questions form the elements of three causes of action. The Special Verdict's findings[1] are summarized as follows: 1) Shelley Mergen made a representation of fact to Troy and Christa Morrison by failing to inform them that the residence had previously been involved in a flooding event; 2) the representation was untrue; 3) Shelley Mergen made the representation knowing it was untrue, or recklessly without caring whether it was true or untrue; 4) Shelley Mergen DID NOT make the representation "with the intent to deceive and induce Troy or Christa Morrison to act upon it;" 5) Troy and Christa Morrison

---

[1] *See* Crawford County Special Verdict, appended at the end of this Memorandum Decision.

3

believed and justifiably relied upon the representation to their pecuniary damage. Findings 1 – 5, as outlined above, appear to form a common law fraud cause of action that the Morrisons did not discuss in their Complaint.

Findings 6 – 10 form the elements of Strict-Liability Misrepresentation.[2] The Special Verdict indicates that the jury found all elements were satisfied: 6) Shelley Mergen made a representation of fact to Troy and Christa Morrison by failing to inform them that the residence had previously been involved in a flooding event; 7) the representation was untrue; 8) Shelley Mergen made the representation based on her personal knowledge…; 9) Shelley Mergen had an economic interest in the transaction; 10) Troy and Christa Morrison believed and justifiably relied upon the representation to their pecuniary damage.

Findings 11 – 13 roughly track with the elements of Untrue, Deceptive, or Misleading Representations.[3] The Special Verdict indicates that the jury found all elements were satisfied: 11) Shelley Mergen, by … placing before the public an advertisement … concerning the sale of the residence owned by Michael Adamski, by failing to inform Troy and Christa Morrison that the residence had previously been involved in a flooding event, made a representation to Troy and Christa Morrison with the intent to induce them to purchase the residence; 12) the representation was untrue, deceptive, or misleading; 13) the representation caused the plaintiffs a pecuniary loss.

Finding that the elements of the latter two causes of action (Findings 6 – 13) were proven, the jury awarded the Morrisons $42,500.00 in compensatory damages. Failing to find "intentional disregard for the rights of Troy and Christa Morrison," the jury did not award

---

[2] *See Weber, Leicht, Gohr & Assocs. v. Liberty Bank*, 2000 WI App 249 ¶ 3 (2000) (discussing the five elements of Strict Liability Misrepresentation).
[3] *See Novell v. Migliaccio*, 2008 WI 44, ¶ 49 (2008).

4

punitive damages. The state court issued an Order for Entry of Judgment in the amount the jury awarded. In light of the Special Verdict, the debtor argues that the case should be dismissed, while the Morrisons want us to disregard the jury finding of no "intent to deceive," and enter a judgment on default that the debt is non-dischargeable.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The primary purpose of summary judgment is to avoid trial where there is no genuine issue of material fact in dispute. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990).

Issue or claim preclusion bars the relitigation of issues that have actually been decided in a previous case between the same parties. *State v. Nommensen*, 2007 WI App 224 ¶ 20 (2007). Under Wisconsin law, the elements of claim preclusion are: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction. *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 22 (2007).

Similarly, the doctrine of collateral estoppel provides that a factual issue which has been litigated and finally determined in a prior lawsuit may not be relitigated in a subsequent lawsuit. *In re McGuffey*, 145 B.R. 582, 587 (Bankr. N.D. Ill. 1992). The Seventh Circuit Court of Appeals held that collateral estoppel is applicable to cases in which a court hearing a non-bankruptcy case has finally determined factual issues relevant to a subsequent dischargeability claim, as long as the non-bankruptcy court used the same standards that a bankruptcy court

5

would have used in determining those issues. *Id.* (citing *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987)). In this circuit, four requirements must be met before collateral estoppel will preclude relitigation of a factual issue in a subsequent bankruptcy proceeding: the issue which is sought to be precluded from relitigation must be the same as the issue involved in the prior proceeding; the issue sought to be precluded must have been actually litigated in the prior proceeding; determination of the issue must have been essential to the final judgment in the prior proceeding; and the party against whom estoppel is sought must have been fully represented in the prior action. *Klingman v. Levinson*, 831 F.2d at 1295.

The state court causes of action that the Morrisons invoked in their Complaint do not track exactly with the elements of § 523(a)(2)(A) – "fraudulent intent" is missing in both. However, Findings 1 – 5 of the Special Verdict appear to form a separate cause of action litigated in state court, the elements of which are symmetrical to § 523(a)(2)(A). In order to come within § 523(a)(2)(A), a plaintiff must prove the elements of fraud. *Holzhueter v. Zinck (In re Zinck)*, 321 B.R. 916, 920 (Bankr. W.D. Wis. 2005). Although variously stated in different cases, the "five fingers of fraud" are: (1) debtor made material false statements; (2) debtor knew the statements were false; (3) debtor intended to deceive the plaintiff; (4) plaintiff justifiably relied on the false statements; and (5) plaintiff was damaged. *Id.* The elements of § 523(a)(2)(A) are virtually identical to the elements alluded to in Findings 1 – 5.

In this case, the Seventh Circuit standard for collateral estoppel is satisfied. The Complaint and the Special Verdict establish that the elements of § 523(a)(2)(A) are identical to the issues already litigated in state court. The Special Verdict makes clear that the jury's determination of these elements was essential to its final judgment. By its answers to the Special Verdict, the jury denied recovery under the plaintiffs' first cause of action and denied punitive

6

damages. Finally, a review of the state circuit court website indicates that in the underlying Crawford County case, the Morrisons were plaintiffs and the debtor was a named defendant. All relevant parties were represented by counsel. Therefore, the elements of collateral estoppel are satisfied. The elements of issue preclusion under Wisconsin law are also met here, because the state court judgment constitutes "a final judgment on the merits in a court of competent jurisdiction." Accordingly, the state court judgment is entitled to preclusive effect.

The Special Verdict makes clear that only four of the five elements of § 523(a)(2)(A) were found to be satisfied. 11 U.S.C. § 523(a) states in relevant part:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…

To succeed under this section, all three ingredients are needed - falsity, fraudulent intent, and reliance. *Bremer Bank, N.A. v. Wyss (In re Wyss)*, 355 B.R. 130, 133 (Bankr. W.D. Wis. 2006).

In this case, the jury found that the debtor did not act with fraudulent intent when she made a misrepresentation to the Morrisons. Question Four of the Special Verdict plainly asks "Did Shelley Mergen make the representation with the intent to deceive and induce Troy or Christa Morrison to act upon it?" and the jury answered "No." This court cannot reexamine that finding.

Because collateral estoppel applies in this case, no trial is needed. The state court addressed each of the five elements essential to § 523(a)(2)(A) and found that one was not

7

satisfied. The Morrisons cannot prevail under § 523(a)(2)(A) because identical issues were litigated in state court and the jury found that the debtor lacked the requisite intent to deceive.

For these reasons, summary judgment is GRANTED in favor of the debtor, and DENIED as to the Morrisons. This case is DISMISSED. It shall be so ordered.

Dated: May 1, 2012

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

| STATE OF WISCONSIN | CIRCUIT COURT | CRAWFORD COUNTY |
|---|---|---|

TROY A. MORRISON and
CHRISTA K. MORRISON,

        Plaintiffs,

v.

SHELLY MERGEN and
MERGEN REAL ESTATE, INC.,

        Defendants.

SPECIAL VERDICT

Case No. 07-CV-147

*Donna M. Steiner, Clerk*
*Crawford County, Wis.*
**DEC 02 2010**
*Clerk of Circuit Court Office*
**FILED**

STATE OF WISCONSIN
COUNTY OF CRAWFORD
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE DOCUMENT ON FILE IN MY OFFICE. WITNESS MY HAND AND OFFICIAL SEAL THIS 11TH DAY OF APRIL, 2012
DONNA M. STEINER, CLERK
BY [signature]

Question 1: Did Shelly Mergen, by failing to inform Troy and Christa Morrison that the residence had previously been involved in flooding event, make a representation of fact to Troy and Christa Morrison?

    Answer: _Yes_
    (Yes or No)

Question 2: If you answered "yes" to question 1, answer this question:

Was the representation untrue?

    Answer: _Yes_
    (Yes or No)

Question 3: If you answered "yes" to both questions 1 and 2, answer this question:

Did Shelly Mergen make the representation knowing it was untrue, or recklessly without caring whether it was true or untrue?

    Answer: _Yes_
    (Yes or No)

Question 4: If you answered "yes" to question 3, answer this question:

Did Shelly Mergen make the representation with the intent to deceive and induce Troy or Christa Morrison to act upon it?

    Answer: _No_
    (Yes or No)

Question 5: If you answered all the preceding questions "yes," answer this question:

Did Troy and Christa Morrison believe and justifiably rely upon the representation to their pecuniary damage:

EX. A

1

Answer: _____
(Yes or No)

Question 6: Regardless of how you answered the preceding questions, answer this question:

Did Shelly Mergen, by failing to inform Troy and Christa Morrison that the residence had previously been involved in flooding event, make a representation of fact to Troy and Christa Morrison?

Answer: ___Yes___
(Yes or No)

Question 7: If you answered "yes" to question 6, answer this question:

Was the representation untrue?

Answer: ___Yes___
(Yes or No)

Question 8: If you answered "yes" to questions 6 and 7, answer this question:

Did Shelly Mergen make the representation based on her own personal knowledge, or was she so situated that she necessarily ought to have known the truth or untruth of the statement?

Answer: ___Yes___
(Yes or No)

Question 9: If you answered "yes" to questions 6, 7 and 8, answer this question:

Did Shelly Mergen have an economic interest in the transaction?

Answer: ___Yes___
(Yes or No)

Question 10: If you answered "yes" to questions 6, 7, 8 and 9, answer this question:

Did Troy and Christa Morrison believe that the representation was true and justifiably rely on it to their pecuniary damage?

Answer: ___Yes___
(Yes or No)

Question 11: Regardless of how you answered the preceding questions, answer this question:

2

Did Shelly Mergen, by making, publishing, disseminating, circulating or placing before the public an advertisement, announcement, statement or representation concerning the sale of the residence owned by Michael Adamski, by failing to inform Troy and Christa Morrison that the residence had previously been involved in flooding event, make a representation to Troy and Christa Morrison with the intent to induce them to purchase the residence?

Answer: __Yes__
(Yes or No)

Question 12: If you answered question 11 "yes," answer this question:

Was the representation untrue, deceptive or misleading?

Answer: __Yes__
(Yes or No)

Question 13: If you answered questions 11 and 12 "yes," answer this question:

Did the representation cause the plaintiff a pecuniary loss?

Answer: __Yes__
(Yes or No)

Question 14: If you answered questions 1 through 5 inclusive "yes", and/or you answered questions 6 through 10 inclusive "yes" and/or you answered questions 11 through 13 inclusive "yes", answer this question:

What sum of money will reasonably compensate Troy and Christa Morrison for their losses?

Answer: $ __42,500.—__

Question 15: If you answered "yes" to questions 1- 5, answer this question:

Did Shelly Mergen act with an intentional disregard for the rights of Troy and Christa Morrison?

Answer: __—__
(Yes or No)

Question 16: If you answered the preceding question "yes", answer this question:

What sum, if any, do you assess against Shelly Mergen as punitive damages?

Answer: $ __—__

3

Dated at Prairie du Chien, Wisconsin, this ___2___ day of December, 2010.

_____
Foreperson

Dissenting Jurors:                              Question numbers:

_Brenda L. Stroom_                              _#, #, 11._

_Shelly M_____                              _4_

_Ben Hol_____                                 _11, #12_

~~Kendall Kitzke~~                              ~~14~~ KK

~~Holly Nichol___~~                             ~~14~~ HN

4

STATE OF WISCONSIN        CIRCUIT COURT        CRAWFORD COUNTY

TROY A. MORRISON and
CHRISTA K. MORRISON

Plaintiffs,

vs.

Case No. 07-CV-147

SHELLY MERGEN, and
MERGEN REAL ESTATE, INC.,

Defendants.

Donna M. Steiner, Clerk
Crawford County, Ws.

FEB 2 1 2011

Clerk of Circuit Court Office
FILED

### ORDER FOR ENTRY OF JUDGMENT

This matter having been tried to a jury on November 29, 2010 through December, 2 2010, and the jury having returned its Special Verdict in favor of the Plaintiffs in the amount of $42,500.00 on December 6, 2010, which Verdict was accepted by the Court, it IT IS ADJUDGED and ORDERED, that the Plaintiffs Troy and Christa Morrison are entitled to judgment, joint and several, in favor of the Plaintiffs and against Defendants Shelley Mergen and Mergen Real Estate, Inc. in the amount of $42,500.00, and the Clerk of Court shall enter judgment accordingly, along with allowable costs and interest at the rate of twelve percent (12%) per annum on the verdict from December 6, 2010 to the date of entry of the Judgment.

Dated: FEBRUARY 21, 2011.

BY THE COURT:

/s/ James P. Czajkowski
James Czajkowski, Circuit Court Judge

EX. B

Crawford County 07-CV-147
Morrison et al. v. Mergen, et al.

## JUDGMENT

Pursuant to the Order of the Court;

IT IS ADJUDGED, that the Plaintiffs, Troy and Christa Morrison, have and recover of the Defendants, joint and several, the sum of $42,500.00, together with interest at the rate of twelve percent (12%) per annum ($13.97 per diem) on the verdict from December 6, 2011, through February 11, 2011, in the sum of $936.16, for a total of 43,436.16, together with costs and disbursements of this action, hereby taxed in the sum of $2,436.15, for a total of $45,872.31, through February 11, 2011.

Dated: this __21__ day of February, 2011.

BY THE COURT:

_Lisa Miller deputy_
Clerk of Circuit Court

2

## PLAINTIFF'S NOTICE OF TAXATION OF COSTS, BILL OF COSTS AND AFFIDAVIT IN SUPPORT OF COSTS

### BILL OF COSTS

| | | PROPOSED | ALLOWED |
|---|---|---|---|
| Filing Fee | | $256.00 | $ |
| Service Fees | Shelley Mergen | $26.25 | $ |
| | Mergen Real Estate, Inc. | $26.25 | $ |
| | Monica Horner | $51.25 | $ |
| | Michael Adamski | $26.25 | $ |
| Jury Fee: | | $36.00 | $ |
| Witness Fees | Monica Horner | $14.00 | $ |
| | Michael Adamski | $14.00 | $ |
| | Myra Hoffman | $14.00 | |
| Witness Mileage: | Monica Horner | $1.00 | $ |
| | Michael Adamski | $2.50 | $ |
| | Myra Hoffman (Sparta, WI) three days travel | $91.20 | $ |
| Statutory Expert Witness Fees: | Myra Hoffman | $300.00 | $ |
| Statutory Attorney's Fees: | Christopher Dyer | $500.00 | $ |
| Deposition Fees/Copy Fee | | $1,077.45 | $ |
| | Total | $2,436.15 | $ |

Donna M. Steiner, Clerk
Crawford County, Wis.

FEB 21 2011

Clerk of Circuit Court Office
FILED

The costs and disbursements allowed on the bill of costs are taxed in the amount of $ 2436.15

Dated: 2-21, 2011

_____
Clerk of Court